No. 19,760.

CHARLES C. RIEPEN, GEORGE E. CHEATHAM AS PUBLIC
TRUSTEE OF LARIMER COUNTY, ET AL., *v.*
C. ROBINSON, ET AL.
(372 P. [2d] 456)

Decided May 28, 1962.
July 2, 1962, Opinion modified and rehearing denied.

Mr. CHESTER E. BENNETT, Mr. ED. G. DUCKWORTH, for
plaintiffs in error.

Mr. Paul E. Wenke, Mr. James P. Johnson, for defendant in error Clarence G. Currie.

Mr. Alden T. Hill, Mr. Ralph H. Coyte, for defendants in error Elbert C. Robinson and Zella M. Robinson.

*In Department.*

Opinion by Mr. Justice McWilliams.

Resolution of this writ of error requires a determination of the propriety of a judgment entered by the trial court cancelling a certain deed of trust and invalidating and setting aside the purported sale by the public trustee of the realty conveyed by said deed of trust.

On October 28, 1954, Charles Riepen loaned Elbert C. Robinson and his wife, Zella M., the sum of $6,660.00, and as evidence of this indebtedness the Robinsons executed and delivered to Riepen their promissory note for $6,660.00, payable to order on or before five years from October 28, 1954, with the specific proviso that the note would not become due and owing so long as a certain mining lease entered into by these same parties on this same date "continued in full force and effect." To secure payment of this note the Robinsons conveyed by deed of trust certain realty to the public trustee of Larimer County, in trust forever, with the direction that upon default in payment of the note the realty subject to the deed of trust should be sold and the proceeds delivered to the "beneficiary hereunder or the legal holder of the indebtedness secured hereby" to the extent of the principal and any interest then due and owing on said note.

On October 28, 1954, the Robinsons and Riepen also entered into a written "Agreement and Mining Lease" whereby the Robinsons leased to Riepen for five years certain other lands, and as consideration therefor Riepen agreed, inter alia, to loan to the Robinsons the aforementioned $6,660.00, to work the Lady Moon Mine lo-

cated on the leased property in a "thorough and workmanlike manner and to expend not less than $2,000 each year in the development and mining operations on said mine; provided that the excess expended each year over and above the minimum requirement shall be a credit on the expenditure required for the succeeding year." It was further provided that the Robinsons should receive 50% of the net mill returns realized from the sale of any uranium ore extracted from said land, and specifically "further covenanted and agreed that if second party [Riepen] fails in any respect to fulfill any one or more of the covenants and agreements herein expressed or implied, then and in that event it shall be lawful for first parties [Robinsons] to declare the term of this lease ended on giving second party [Riepen] 60 days Notice of intention so to do, and the failure of second party [Riepen] to remedy such default in that period, in which event all right, title, claim and interest of second party [Riepen] in and under this lease shall cease and determine [sic], but a condition precedent to any forfeiture of this lease shall be repayment of the $6,660.00 loan above mentioned."

On February 5, 1960, Charles Riepen and his wife, Sally Jo, filed with the Public Trustee for Larimer County their demand for sale of the land described in the trust deed as security for payment of the note, declaring that the note was then due and owing and that the Robinsons had made no payment on the indebtedness evidenced by the note. The note, incidentally, had at some time, date unknown, been endorsed by Charles Riepen to himself and his wife, as joint tenants. On April 6, 1960, the Robinsons orally requested the public trustee to refuse to hold the proposed public sale of the property included in the deed of trust and on that same date filed this action in the district court of Larimer County, naming as parties defendant Charles Riepen and one George Cheatham, the public trustee of Larimer County. A lis pendens was also filed on April 6, 1960. The public

trustee, notwithstanding the claim by Robinsons that because of their "set off" claim against Riepen nothing was in fact due and owing on the note, on April 8, 1960, sold the land covered by the deed of trust to one Clarence Currie for some $7,200. The evidence disclosed that Robinson and his attorney appeared at the sale and advised all within earshot, including Cheatham and Currie, that the sale proceedings were unlawful and that under the circumstances all that Currie was purchasing was a "law suit." However, the sale was made and the public trustee issued Currie a certificate of purchase.

On June 1, 1960, the trial court quashed the purported service of process on Riepen, who was then a resident of · Arizona and who had been "served" in Arizona. Also, the trial court dismissed the action as to the public trustee on the ground that the complaint failed to state a claim upon which any relief could be granted. The record before us, incidentally, does not include the Robinsons' original complaint. However, on June 3, 1960, the Robinsons filed an amended complaint, naming as defendants both Riepens, Cheatham, the public trustee, and Clarence Currie. The Robinsons chose to characterize their amended complaint as one for "Injunction, Sequestration, Cancellation and to Adjudicate Title to Real Estate and Interests Therein" and in essence alleged that Riepen had breached the "Agreement and Mining Lease" and that the resultant damage to Robinsons exceeded any unpaid indebtedness due Riepen on the note. By its ruling on certain preliminary motions the trial court held that the amended complaint stated a claim upon which relief could be granted and that the court in fact had jurisdiction over all parties. Upon trial the court found that Riepen had indeed breached the "Agreement and Mining Lease" and although the trial court did not precisely determine Robinsons' damage, it did find that such resultant damage to the Robinsons was more than the amount owing on the note. Accordingly, the trial court

entered judgment cancelling the deed of trust and invalidating the purported sale by the public trustee.

Just prior to trial Robinsons tendered into court certain monies in a sufficient amount to redeem the property should it be ultimately determined by the court that the Robinsons had no lawful claim for damages against Riepen and that they in fact owed Riepen the full amount of the note. Under these circumstances Currie by stipulation surrendered his certificate of purchase and consented to its cancellation, thereby relegating any claim of his against the Robinsons to a claim against the redemption money deposited in court, Currie's claim admittedly being contingent upon the determination by the trial court that Riepen was in no wise indebted to the Robinsons for any alleged breach of contract. It was also agreed that Currie's cross-claim against the public trustee would be tried at a later date, if necessary.

The Robinsons initially contended that the note was not yet due because the mining lease between the parties was still in effect, it having been specifically provided that in such event the note would not become due and owing. However, this mining lease by its own terms expired on October 28, 1959, and it was neither pleaded nor proved that it was extended by any mutual agreement of the contracting parties. Accordingly, this contention was abandoned by the Robinsons and their basic claim both in the trial court and here is that even though the note was due and owing, nevertheless because of their claim for damages against Riepen, he [Riepen] was in fact indebted to them in an amount considerably in excess of the amount owing on the note, and they assert an equitable right to a "set-off," contending that if their claim be established upon trial then the purported sale by the public trustee should be set aside.

This poses at the very outset the basic question of whether the trustor of a deed of trust given as security for a note, may in equity set aside the extra-judicial sale by the public trustee of the land subject to the deed of

trust on the grounds that though the note was due and owing, he [the trustor] had an unliquidated claim for damages against the payee named in the note which was in excess of the amount due under the note. We conclude that this is insufficient to justify the setting aside of such a sale by the public trustee.

59 C.J.S. Mortgages §552, page 895 reads as follows:

"Unless otherwise provided by statute, a sale under the power will not be enjoined merely for the purpose of allowing the mortgagor to set up an independent demand or set-off, if it does not appear that the mortgagee is insolvent, or that such claim will otherwise be lost by allowing the sale to proceed; but, where the mortgagee is insolvent and is doing or threatening to do some act which will defeat the mortgagor's rights, the latter is entitled to have the sale enjoined until the action can be tried on its merits."

In like manner, 37 Am. Jur. Mortgages §728, page 157 provided:

"To Enforce Claim or Interpose Defense, Setoff, etc. — Under some statutes, foreclosure by sale under a power of sale in a mortgage or deed of trust may be enjoined where the mortgagor has a legal counterclaim or any other valid defense against the collection of the whole or any part of the amount claimed to be due on the mortgage. However, a demand for unliquidated damages for breach of covenant of warranty of land is not ground to enjoin a sale of the land for debt under a deed of trust. It has been ruled that a sale under the power in the mortgage is a remedy at law, and an injunction for the purpose of interposing a setoff will not be granted in the absence of statute except on special equitable grounds. Thus, equity will not enjoin the execution of a power of sale until an unliquidated demand due from the defendant to the complainant can be ascertained and set off, in the absence of an allegation of the defendant's insolvency or other special equity; and the defendant's re-

fusal to accept a conveyance of the property in full discharge of the debt does not arm the complainant with any special equity."

If an unliquidated claim for damages which the mortgagor asserts against the mortgagee is insufficient ground upon which to enjoin a proposed extra-judicial sale by a public trustee, it logically follows that such ground is also insufficient to set aside the sale after it has occurred.

In 59 C.J.S. Mortgages §601, page 1050 it is recognized that "if sufficient grounds are shown, and in the absence of waiver or estoppel or intervening rights of third persons, the mortgagor or other persons interested in the subject matter may sue in equity to set aside a sale made under a power of sale." However, this same text indicates such sales are not to be easily or lightly set aside, and that in general no sufficient ground exists for setting aside the sale if the trustee has conducted it according to the terms of the trust and with absolute fairness. There is no indication that, standing alone, an unliquidated claim by the mortgagor against the mortgagee is a "sufficient ground" to set aside an extra-judicial sale by the public trustee under a power of sale.

To the same effect, 37 Am. Jur. Mortgages §735, page 160 provides:

"At Suit of Mortgagor. — It is a general rule that a sale under a power in a mortgage may be set aside in a proper case, and various rules have been laid down as to when there is a proper case for such relief. It has been ruled that such relief will not be granted for light and trivial reasons, or for mere errors of judgment in selecting the mode of sale; otherwise, confidence in sales would be impaired and bidding discouraged. Thus, it must appear that there have been material and injurious defects or irregularities, prejudicial to the mortgagor, before he is entitled to have the sale set aside. In fact, several courts have maintained that in order to obtain the aid of a court to avoid a sale under a mortgage or a

deed of trust, there must be some fraud, unfair dealing, or abuse, by the person making the sale, of the confidence reposed in him, or some injury resulting from a sale made in one mode rather than in another in which it is contended that it should have been made."

In support of their position the Robinsons rely heavily upon *Hauger v. Gates,* 42 Cal. (2d) 752, 269 P. (2d) 609 where it was held that a trustor under a deed of trust was entitled to offset money owed him by the beneficiary against the unpaid amount due on a note secured by a deed of trust and that when because of this offset there was not in fact any indebtedness due from the trustor to the beneficiary, the sale to a purchaser who was not a purchaser in good faith or for value could be, and in fact was, set aside. However, the Supreme Court of California in the *Hauger* case, supra, attached great significance to the fact that section 440 of the California Code of Civil Procedure provided that:

"When cross-demands have existed between persons under such circumstances that, if one had brought an action against the other, a counterclaim could have been set up, the two demands shall be deemed compensated so far as they equal each other, and neither can be deprived of the benefit thereof by the assignment or death of the other."

It should be noted that Colorado has no comparable provision to this particular section of the California Code, and hence the *Hauger* case is of little assistance in resolving the present controversy.

■ The Robinsons at least tacitly recognize the validity of the general rule that sales by a public trustee acting under power of sale should not be casually set aside simply because the trustor, though in default on his note, has an unliquidated claim for damages against the payee named in the note by contending that a different rule should prevail solely because the Riepens are now bona fide residents of Arizona, and that because of this fact they may have to litigate their damage claim against

Riepens in that state. In support thereof they cite *Platt-ner Imp. Co. v. Bradley & Co.* 40 Colo. 95, 90 Pac. 86, and *Strong v. Gordon,* 203 Mo. Appeals 470, 221 S.W. 770. Neither of the cases cited involves an attempt by a mortgagor to set aside an extra-judicial sale by a public trustee on the ground that the mortgagor has an unliquidated claim for damages against the mortgagee, and the factual situation in each of those cases is so dissimilar to that of the instant case that neither is believed to be of any assistance in our resolution of the present controversy.

For these reasons we conclude that the trial court erred in cancelling the deed of trust and setting aside the trustee's sale.

In their amended complaint the Robinsons also sought cancellation of a certain mineral deed by which they conveyed to Charles C. Riepen a two and one-half per cent interest in and to all minerals, not including oil and gas, in and under certain described lands, the deed being attached to the amended complaint and referred to as exhibit C. By answer Riepen admitted the execution and delivery of this deed, alleged that it was "wholly worthless and entirely valueless" and offered "to give said Robinsons a quitclaim deed at any time." In its judgment the trial court ordered cancellation of this mineral deed and Riepen does not assign error thereto.

Accordingly, that part of the judgment ordering cancellation of the mineral deed is affirmed. In all other respects the judgment is reversed and the cause remanded with directions to vacate the judgment cancelling the deed of trust and setting aside the trustee's sale, and to enter judgment in favor of the Riepens, and Cheatham as the public trustee for Larimer County.

MR. JUSTICE SUTTON and MR. JUSTICE PRINGLE concur.